IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **RICHARD R. MALLINI,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-0130-CG-C |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | |
| **INDUSTRIAL RELATIONS and** | ) | |
| **THOMAS SURTEES, Director,** | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on defendants' motion for summary judgment (Doc. 9), plaintiff's motion to dismiss defendants' motion as premature (Doc. 11), defendants' response in support of dismissal and summary judgment (Doc. 13), plaintiff's response to defendants' motion to dismiss (Doc. 16), defendants' second motion to dismiss, or in the alternative for summary judgment (Doc. 34), plaintiff's motion for summary judgment (Doc. 36), plaintiff's response to defendant's second motion (Doc. 40), and defendants' response to plaintiff's motion for summary judgment (Doc. 42). The court finds that plaintiff's claims are not barred by Eleventh Amendment immunity, that the State of Alabama Personnel Department is not a necessary party to this action, and that there were no administrative remedies required to be exhausted by plaintiff before the filing of this suit. However, the court finds that plaintiff's claims are barred by the statute of limitations to the extent they arose before March 15, 2008. The court further finds

that although plaintiff has established a prima facie case under the Equal Pay Act, any differential in pay was justified by factors other than sex. Therefore, summary judgment is due to be granted in favor of defendants.

## FACTS

Plaintiff filed this action on March 15, 2010, seeking relief under the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act, 29 U.S.C. § 206(d). (Doc. 1). The complaint alleges that defendants, as his employer, violated section 6(d) of the Fair Labor Standards Act by discriminating against him on the basis of sex by paying wages and benefits to plaintiff at rates less than the rates it pays to its female employees in the same establishment for equal work, requiring equal skill, effort and responsibility and performed under similar working conditions. The basic facts in this case are undisputed. The parties agree that plaintiff has been employed by the State of Alabama Department of Industrial Relations ("ADIR") since March 5, 1980. He was promoted to ES Senior Manager in 2006 and currently holds that position.

In August 1998, about eight years before plaintiff's promotion, the Alabama State Personnel Board allowed for ES Senior Managers at ADIR to receive a four-step differential pay increase due to the expanded duties being performed by these individuals at the time. (Doc. 9-1, p. 1). A total of five individuals were granted the pay increase between 1998 and 2003; one male, William C. Parker, and four females. (Id.). In January 2001, the Alabama State Personnel Department

abolished the pay differential. (Id.; Doc. 9-2). No current employees receive the pay differential. (Doc. 9-1, p. 1). However, some of the employees who had received the differential continued to receive it after it was abolished in 2001. (Doc. 34-1, pp. 1-2). The continuance of the pay differential was reportedly due to a mistake or error by the ADIR and/or the State Personnel Department. (Doc. 34-1, p. 2). The error was corrected before the ADIR reportedly had knowledge of plaintiff's allegations of disparate treatment. (Doc. 34-1, p. 2).

Two females, Carolyn Walker and Annie Erskine, received the 4-step pay differential until their retirement. (Doc. 36-4, ¶ 9). Another female, Kathy Evans, maintained her 4-step pay differential until she was promoted out of the position on November 1, 2008. (Doc. 36-4, ¶ 10, Doc. 36-7, p. 1). At that time, ADIR was informed that Evans was being improperly paid and that her salary must be reduced before they could calculate her promotional increase. (Doc. 36-4, ¶ 10). On March 5, 2009, the Director of ADIR, defendant, Thomas Surtees, wrote a letter to the State Personnel Department requesting that Evans be given a merit raise because she had accepted the promotion and relocated with the expectation of maintaining the 4-step differential. (Doc. 36-7). The letter also requested that another female, Yvette Wright-Fields, be allowed to retain her 4-step differential until she is promoted, reassigned, or no longer employed in that class. (Id.). Ms. Fields had her 4-step pay differential removed on July 1, 2009. (Doc. 36-4, ¶ 11).

William C. Parker retired on February 1, 2006. (Doc. 36-4, ¶ 3). Plaintiff applied for the position in February 2006 and was promoted to the position on

March 4, 2006. (Doc. 36-4, ¶ ¶ 4, 5). Plaintiff reports that he was promised a 4-step pay differential as a result of the promotion. (Doc. 36-4, ¶ 4). If plaintiff had received the 4-step pay differential at the end of his probationary period, he calculates that he would have received an additional $15,239.61 from March 15, 2007, through July 21, 2009. (Doc. 36-4, ¶¶ 18-21).

According to the Director of the Human Resource Division at ADIR, plaintiff never discussed with her or filed any document alleging that he was being discriminated against because of his sex. (Doc. 34-1, p. 2). She reports that the ADIR does not have the authority to make a unilateral decision on pay differentials and that, since the pay differential had been abolished in 2001, there was no possibility for ADIR to make the differential payment to plaintiff. (Id.).

Defendants assert (1) that plaintiff cannot establish a prima facie case under the Equal Pay Act; (2) that any difference in pay was based on seniority or other factor unrelated to sex; (3) that the action is barred because Congress has not abrogated Eleventh Amendment immunity in Equal Pay lawsuits and defendant has not waived that immunity; (4) that the complaint fails to bring in all necessary and indispensable parties; (5) that plaintiff has not exhausted his administrative remedies; and (6) that plaintiff's claims are barred by the statute of limitations.

Plaintiff, on the other hand, asserts that he is entitled to summary judgment because he has established a prima facie case and defendants have failed to justify the disparity in pay. Plaintiff further asserts that Eleventh Amendment immunity does not bar this action, that the Alabama State Personnel Department is not a

necessary party, that there are no administrative requirements that had to be exhausted prior to filing this suit, and that plaintiff's claims are not barred by the statute of limitations.

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.

The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that

6

the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Prima Facie Case**

ADIR asserts that plaintiff cannot establish a prima facie case under the Equal Pay Act (EPA). "To establish a prima facie case under the EPA, the plaintiff must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. " Butler v. Albany Intern., 273 F.Supp.2d 1278, 1288 (M.D. Ala. 2003) (quoting Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992) internal quotations omitted). "A court's resolution of a plaintiff's claim that the work she performed is "equal" to that of the comparator does not depend simply on a comparison of job titles or classifications, but on a comparative analysis of actual job requirements and performance." Id. (citing 29 C.F.R. § 1620.13(e); Pearce v. Wichita County, City of Wichita Falls, Tex., Hosp. Bd., 590 F.2d 128, 133 (5th Cir. 1979)). "The standard for determining whether jobs

are equal in terms of skill, effort, and responsibility is high." Id. at 1289 (citing Waters v. Turner, Wood, & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989)).

> "Effort" as that term is used in connection with a prima facie case under the EPA "is concerned with the measurement of the physical or mental exertion needed for the performance of a job." Pearce, 590 F.2d at 133 (quoting 29 C.F.R. § 800.127 (1977)). On the other hand, "skill" is used to refer to factors such as "experience, training, education, and ability." Id. (quoting 29 C.F.R. § 800.125 (1977)). Finally, "responsibility" is used to refer to the "degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." Id. (quoting 29 C.F.R. § 800.130 (1977)).

Nixon v. Autauga County Bd. of Educ., 273 F.Supp.2d 1292, 1298 (M.D. Ala. 2003). "Thus, although employees do not have to prove jobs are identical, they have the heavy burden of proving 'substantial identity of job functions.'" Butler, 273 F.Supp.2d at 1289. (citations omitted).

ADIR contends that plaintiff cannot establish a prima facie case because he cannot establish that the employer pays different wages to employees of the opposite sex. One of the employees at the ADIR to have received the pay differential was a male, William Parker. However, plaintiff's claim is based on the time period after he was promoted to ES Senior Manager in 2006. William C. Parker retired on February 1, 2006. Plaintiff applied for the position in February 2006 and was promoted to the position on March 4, 2006. Plaintiff does not claim that he should have received the 4-step pay differential until the end of his probationary period, from March 24, 2006, through July 21, 2009. At the time of his promotion, the only other employees receiving the 4-step differential were female. Thus, there is evidence that, during the relevant time period, ADIR was paying different wages to females holding the same or

similar positions. There appears to be no dispute that plaintiff and the females receiving the 4-step differential were performing the same job duties with substantially the same responsibilities from March 24, 2006, through July 21, 2009. As such, the court finds that plaintiff has established a prima facie case.

**B. Justification for Differential Pay**

ADIR asserts that any difference in pay was based on seniority or other factor unrelated to sex. Once a prima facie case is demonstrated, to avoid liability, the employer must demonstrate that the differential is justified by one of four exceptions: (1) "a seniority system;" (2) "a merit system;" (3) "a system which measures earnings by quantity or quality of production;" or (4) "a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). "Importantly, a defendant invoking an affirmative defense under the EPA must show that the factor of sex provided no basis for the wage differential." Butler, 273 F.Supp.2d at 1290. (citations omitted). "A defendant's burden in establishing the application of one of the exceptions is a heavy one." Id. (citations omitted). "[T]he employer's burden is more than one of mere production, but one of persuasion." Blount v. Alabama Co-op. Extension Service, 869 F.Supp. 1543, 1554 (M.D. Ala. 1994) (citing Meeks v. Computer Assoc. Int'l, 15 F.3d 1013, 1018 (11th Cir. 1994)). The Eleventh Circuit has found factors other than sex to "include 'unique characteristics of the same job; ... an individual's experience, training or ability; or ... special exigent circumstances connected with the business." Irby v. Bittick, 44 F.3d 949, 955 (11th Cir. 1995). "[S]o long as subjective business justifications ... are not overly subjective so as to render them incapable of being

9

rebutted, they are legitimate factors to be considered." Schwartz v. Florida Bd. of Regents, 954 F.2d 620, 623 (11th Cir. 1991).

If the defendant overcomes the burden, the plaintiff must rebut the explanation by showing that stated reason for a differential in pay is pretextual or offered as a post-event justification for a gender-based differential. Id. (citation omitted). The plaintiff is not required to prove discriminatory intent on the part of the defendant. Id. (citation omitted). "If the plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial." Id. (citation omitted).

ADIR contends that any wage discrepancy resulted because employees had been in the position of ES Senior Manager long before the plaintiff was promoted into that classification in 2006. The 4-step differential was created because at the time, the employees in that position had additional duties that current ES Senior Managers no longer have. Plaintiff had not been promoted to the position at that time and has never had to perform these additional duties. The factors involved in the State Personnel Department granting the 4-step differential was clearly not based on sex. Once the extra duties were eliminated, the State Personnel Department abolished the 4-step pay differential. However, employees who had received the differential continued to receive it after it was abolished in 2001 and some employees were granted the pay differential who were promoted into the position after the pay differential was abolished. The continuance of the pay differential was reportedly due to a mistake or error by the ADIR and/or the State Personnel Department. There is no evidence that any employees were granted the 4-step differential after plaintiff was

promoted to ES Senior Manager, but the evidence clearly establishes that female ES Senior Managers that had previously been granted the pay differential continued to receive the pay differential after plaintiff's promotion.

The Sixth Circuit has found that a wage disparity due to a mistake is justified because it is based on a factor other than sex. Timmer v. Mich. Dept. of Commerce, 104 F.3d 833, 843 (6th Cir. 1997) (citing EEOC v. Romeo Community Schs., 976 F.2d 985, 988-989 (6th Cir. 1992). Of course if there are contradictory facts suggesting that a mistake was not the true reason for wage disparity, then the true reason remains an issue for trial. Id. at 844. (citing Romeo supra). However, the Sixth Circuit noted that when there is an elaborate system or set of rules that the defendant was to apply, it is not surprising that unfortunate errors occur, "but as long as such errors are sex neutral, they are not violations of the [Equal Protection] Act." Id. (citation omitted).

This court is not aware of any case in this circuit which has addressed the issue of mistake in application of pay differentials.[1] Plaintiff appears to argue that the

---

[1] Plaintiff cites Turnes v. AmSouth Bank, N.A., 36 F.3d 1057 (11th Cir. 1994) for the contention that an employer cannot base its rebuttal upon a mistaken act. However, the court does not find Turnes to support plaintiff's case. In Turnes, the plaintiff asserted a Title VII claim of racial discrimination in hiring. The person that interviewed plaintiff did not recall the interview or remember why she had not recommended plaintiff for the position. Id. at 1059. The defendant hypothesized that if they had done a credit check, in accordance with the defendant's normal policy, it would have rejected the plaintiff anyway. Id. However, a white applicant was hired during the same time period without a credit check and plaintiff argued that his credit was not bad. Id. This court does not see how the hypothetical proffer in Turnes could equate to the mistake made by the defendants in the instant case. The response that a defendant did not remember the reason and might have had a good reason if they had checked, is not analogous to a claim that the defendant made a non-sex related mistake. There appears to be no dispute that the defendants in the instant case were

court should not follow <u>Timmer</u> and <u>Romeo</u> because the Eleventh Circuit has a narrower view than the Sixth Circuit as to what qualifies as "any other factor other than sex." Plaintiff points to the Eleventh Circuit's requirement that "other business reasons" explain the pay disparity. However, the Sixth Circuit also requires that at a minimum "any other factor" be adopted for a legitimate business reason in order to justify the disparity. <u>Balmer v. HCA, Inc.</u>, 423 F.3d 606, 612 (6th Cir. 2005) (citation omitted). This court is persuaded by the Sixth Circuit's analysis in <u>Timmer</u> and <u>Romeo</u> that a mistake can justify a disparity in pay. In the instant case, there is no evidence that the mistake was not the true reason why defendants continued to pay the pay differential after it was abolished. In fact, the mistake resulted in the pay differential being paid to both male and female employees after the differential had been abolished. There is evidence that once the error was brought to the attention of ADIR, it requested that the female managers be allowed to retain the 4-step differential or be given a comparable merit raise, but did not request the pay differential be granted to plaintiff. However, all of the evidence indicates that the request was based on the fact that these employees had been receiving the pay differential for a long time and had made employment decisions based on the fact that they would continue to receive the pay differential. The stated reasons are unrelated to the sex of the employees. At that time there were no male employees receiving the 4-step pay differential. There is no evidence to suggest that the mistake or the stated

---

actually mistaken, and it is clear that the mistake was not based on the sex of the employee.

reasons for requesting to maintain the differential after the mistake was discovered were not the true reasons. Allowing longtime employees to retain their salaries allow employees to retain experienced and knowledgeable employees, bolsters employee morale and saves the cost of training new employees. See Steger v. General Electric Co., 318 F.3d 1066 (11th Cir. 2003). As such, the court finds that defendants have established that the pay differential was justified and that there is no evidence of pretext.

### C. Eleventh Amendment Immunity

ADIR asserts that the action is barred because Congress has not abrogated Eleventh Amendment immunity in Equal Pay Amendment lawsuits and the defendant has not waived immunity. Absent abrogation or waiver, the Eleventh Amendment bars federal claims for damages against the states, including suits brought by a state's own citizens. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Plaintiff points out that the Eleventh Circuit has ruled that Congress validly abrogated states' sovereign immunity in the Equal Pay Act (which is part of the FLSA) in Hundertmark v. Florida Dep't of Transp., 205 F.3d 1272 (11th Cir. 2000). Before Hundertmark, the district courts in this circuit were split as to whether Congress had properly abrogated the States' immunity for Equal Pay Act claims. See e.g. Belch v. Board of Regents of University System of Georgia, 27 F.Supp.2d 1341, 1350 (M.D. Ga. 1998) (finding that "Congress clearly expressed its intent to abrogate such immunity for claims arising under the Equal Pay Act" and "acted pursuant to a valid exercise of

power."); Larry v. Board of Trustees of the Univ. of Ala., 975 F.Supp. 1447 (N.D. Ala. 1997) (finding that Congress had exceeded its § 5 powers when it attempted to abrogate the States' immunity for claims brought pursuant to the Equal Pay Act, which provides for liability even absent proof of intentional discrimination). The Eleventh Circuit's ruling in Hundertmark clearly overturns the prior district court cases that found States immune from Equal Pay Act claims.

In opposition, ADIR cites another, more recent Eleventh Circuit case which found that Congress, through the FLSA, has not successfully abrogated the states' Eleventh Amendment immunity against suits in federal court. Keeler v. Florida Dept. of Health, Div. of Disability Determinations, 397 Fed.Appx. 579, 582, 2010 WL 3724476, *3 (11th Cir. 2010) ("the abrogation provisions of the FLSA, though explicitly intending to abrogate sovereign immunity, were not a valid exercise of congressional power, as they were not enacted under § 5 of the Fourteenth Amendment." citing Powell v. Florida, 132 F.3d 677 (11th Cir. 1998) (involving FLSA claims for unpaid overtime wages), Alden v. Maine, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (also involving FLSA claims for overtime pay); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)(involving FLSA claims for age discrimination under the ADEA). Courts have agreed that the FLSA's minimum wage and overtime provisions are not within Congress's power under § 5 of the Fourteenth Amendment. See Powell v. State of Fla., 132 F.3d 677, 678 (11th Cir. 1998) (citing cases). However, neither Keeler, nor the cases it relies on Powell, Alden and Kimel, specifically address the Equal Pay Act. In Hundertmark, the Eleventh Circuit

14

discussed cases such as Kimel which involves claims under the ADEA, but found that the Equal Pay Act, unlike the ADEA, "satisfies the congruence and proportionality test expressed by the Supreme Court," and "is a valid exercise of Congress's enforcement powers under § 5 of the Fourteenth Amendment." Hundertmark, 205 F.3d at 1277. The Eleventh Court reasoned as follows:

> Therefore, the ADEA, which attempted to subject the States to suit for any classifications on the basis of age, exceeded Congress's § 5 enforcement powers because it created additional rights. By prohibiting all discrimination based on an individual's age, the ADEA prohibited substantially more state employment decisions and practices than would be held unconstitutional under a rational basis standard. See id. [Kimmel], 120 S.Ct. at 648. Conversely, the Equal Pay Act's prohibition on discrimination in pay and other employment benefits based on gender is congruent with decisions and practices that are deemed unconstitutional under a heightened scrutiny analysis.

Id. (footnote omitted). The court acknowledges that the claims in this case may not follow Congress' intended purpose of enacting the Equal Pay Act since the plaintiff does not seek to correct employment discrimination against women. However, since the Eleventh Circuit has held that the Equal Pay Act is a valid exercise of Congress's enforcement powers under § 5 of the Fourteenth Amendment, this court finds that plaintiff's claims are not barred by Eleventh Amendment immunity.

**D. Necessary and Independent Parties**

Defendants assert that this matter cannot proceed in its current manner because complete relief cannot be accorded without the joinder of the Alabama State Personnel Department. The Alabama State Personnel Department is responsible for

determining the assignment of classes to salary ranges and for establishing and maintaining a roster of all State employees showing their position, salary, and other necessary data. As such, defendants assert that defendants have no authority on their own to grant plaintiff the 4-step pay differential. However, plaintiff does not seek to be granted the pay differential now and has no quarrel with the State Personnel Department's decision to abolish the pay differential in 2001. Instead, plaintiff claims his employer[2] discriminated against him by paying female employees the 4-step pay differential in contravention of the State Personnel Department, while refusing to pay plaintiff the pay differential. In other words, plaintiff alleges that the ADIR broke the rules for females but not for plaintiff. The ADIR continued to pay the females the pay differential even though it claims it had no authority to do so. Plaintiff apparently concedes that he was not entitled to be paid the 4-step pay differential once it was removed from all female employees. Accordingly, the court does not find that joinder of the State of Alabama Personnel Department is necessary.

**E. Exhaustion of Administrative Remedies**

Defendants assert that plaintiff did not take advantage of the opportunity to correct his situation through the administrative processes available with the State of Alabama Personnel Department. However, unlike Title VII claims, claims under the Equal Protection Act do not have to first be raised in an EEOC charge. The Equal

---

[2] Plaintiff points out that the Equal Pay Act provides for an action against any "employer" who violated the Act. 29 U.S.C. § 216.

Protection Act has no administrative remedies that must be exhausted before filing a complaint in federal court. Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1526-1527 (11th Cir. 1992).

**F. Statute of Limitations**

Defendants assert that Equal Protection Act claims must be filed within two years after the claim accrues, or three years in cases where there is a willful violation. See 29 U.S.C. § 255(a). Plaintiff was promoted in March 2006, four years prior to filing this action, on March 15, 2010. However, as plaintiff points out, an inequitable pay claim is triggered with every pay check. Mitchell v. Jefferson County Bd. Edu., 936 F.2d 539, 548 (11th Cir. 1991). Plaintiff has only claimed damages beginning March 15, 2007, exactly three years before this case was filed.

To recover for the period from March 15, 2007, through March 15, 2008, plaintiff would have to show that the violations were willful. To establish that the violations of the FLSA were "willful," an employee must prove "that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1280 (11th Cir. 2008) (citation omitted). The Code of Federal Regulations defines reckless disregard as the "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104. Plaintiff bears the burden of proving that defendants' acts or omissions were willful. Rodriguez v. Farm Stores Grocery Inc., 518 F.3d 1259, 1274 (11th Cir. 2008). It appears to be undisputed that the disparity

17

in pay resulted from a mistake until approximately November 2008 when the mistake was discovered. Disparity resulting from negligence has been found to not constitute reckless disregard. See Reich v. Dep't of Conservation & Natural Res., State of Ala., 28 F.3d 1076, 1084 (11th Cir. 1994). In the instant case, defendants did not display indifference to the enforcement of the FLSA but were not aware of the facts from which an FLSA claim could possibly be asserted until the mistake was discovered in November 2008. Once the mistake was discovered, defendants inquired with the State Personnel Department about remedying the situation. Defendants had no notice of a potential violation until the mistake was brought to their attention. As such, there is no evidence to support a claim that the alleged violations prior to March 15, 2008, were willful.

Plaintiff asserts that defendants failed to raise the defense of statute of limitations in their answer and, thus, that defendants have waived the defense. However, plaintiff has been given ample time to rebut defendants' statute of limitations defense before trial. Raising the § 255(a) statute of limitations for the first time in a motion for summary judgment before trial has been found to be sufficient to avoid waiver. Navarro v. Santos Furniture Custom Design, Inc., 372 Fed.Appx. 24 (11th Cir. 2010) (citing Grant v. Preferred Research Inc., 885 F.2d 795, 797 (11th Cir. 1989)). Therefore, the court finds that defendants have not waived their statute of limitations defense and that plaintiff's claims are barred to the extent they arose prior to March 15, 2008.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (Doc. 34) is **GRANTED**.

**DONE and ORDERED** this 18th day of May, 2011.

/s/ Callie V. S. Granade  
UNITED STATES DISTRICT JUDGE